## GIVENS, ET AL. v. TIDMORE.

1. A party bearing the same name with one of several defendants in a judgment may resist the levy on, and sale of his property under a *fieri facias* by suit in equity, upon the allegation that he is not a party to the note on

which the action was founded, and that he was not served with process.

2. Where a party against whom a judgment is sought to be enforced, alledged in a bill for an injunction, that he was not served with process, and did not make the note on which it was founded, the deposition of a person of the same name, declaring that he made a note of the same amount and date in which the complainant did not unite, will be sufficient to sustain the latter branch of the allegation, if uncontradicted.

3. An answer which negatives a positive allegation, by way of opinion and belief may be overbalanced by proof less stringent and conclusive, than if the defendant's denial had been made upon his own knowledge.

4. It is a general rule, that the party holding the affirmative of the issue, must support it by proof; but this rule has its exceptions.

5. Where, by a bill to enjoin a judgment recovered on a promissory note, the record of the proceedings at law, and the note, are all made evidence, proof in respect to the non-execution of the note should not be excluded because the note is not produced.

6. Where it appears from the process at law, that it was served on an individual bearing the same name of the complainant in equity, who alledges in his bill, that it was served on him, the presumption will be against the truth of the allegation; but when it is shown that the note on which the action was founded, was not made by the complainant, but by another person of the same name, resident in the same county, the presumption will be repelled, and the *onus* of showing that the writ was executed on the complainant will devolve upon the defendant.

Appeal from the Court of Chancery sitting at Jacksonville.

In October, 1842, defendant in error filed his bill, setting forth that at the County Court of Benton, holden in July preceding, a judgment was rendered against him and one William Tidmore, in favor of Messrs. Herndon & Kelly, for the use of James A. Givens, for the sum of $1438 debt and damages, besides $14 06¼ costs. An execution was issued on this judgment, which was levied on the complainant's land. *Further*, the judgment was recovered without any notice by the service of legal process or otherwise, given to the complainant, and he affirms that it is unjust and oppressive, as he never, by note, account or otherwise, was liable to Herndon & Kelly, or Givens, in any manner, or for any cause. Complainant cannot particularly impeach the judgment, as he is a stranger to the grounds upon which the suit was prosecuted against him, but he charges that it is fraudulent, and without consideration, and the result of an unlawful combination

between Herndon & Kelly, Givens and Wm. Tidmore, all whom are made defendants. The bill concludes with a prayer, that process of *subpoena* may issue, and that all further proceedings upon the execution may be enjoined as it respects the complainant, until the matters alledged shall be heard and determined in equity. An injunction was accordingly granted and issued.

Herndon & Kelly, in their answer, admit the rendition of a judgment against the complainant, upon a note made by him and Wm. Tidmore, and which was received by the respondents under these circumstances, viz: Previous to making the note, Wm. Tidmore came to the respondent's store, in Jacksonville, to purchase goods, but not being disposed to sell to him on a credit, required surety to be given ; he informed them that he could give either of his brothers, the complainant, or Adam Tidmore. One of the respondents then wrote a note for the amount of the bill of goods, which was signed by Wm. Tidmore, who took the note and went off, as he said, to obtain the signature of one of his brothers. In three or four days he returned and presented the note to the respondents, subscribed with the complainant's name, and not doubting the genuineness of the signature, they received the note and delivered the goods. The complainant and William Tidmore, resided several miles from respondent's place of business, but near to each other. Respondents never heard, until a considerable length of time after they had transferred the note for a valuable consideration, that the complainant's signature was denied ; the goods sold by them to William Tidmore, were taken near the complainant's residence, and they believe he was aware of the entire transaction, signed the note, or if he did not, knew that William Tidmore practised a fraud upon the respondents, and connived at it. The answer also embraces a demurrer to the bill.

The defendant, Givens, states that he traded for the note in question with his co-defendant, Herndon, on the 21st July, 1841, who transferred the same by his indorsement ; that respondent caused suit to be brought thereon against John and Wm. Tidmore, to the first Court of the county of their residence, which was holden after he received the note ; that he is informed, and believes, that process was regularly issued and served, upon both of them, and that failing to make defence, a judgment by default was rendered against them at the second term thereafter. Res-

pondent knows nothing of the execution of the note, but believes that it was made by both the Tidmores whose names appear as makers. He denies all fraud, &c., and in his answer insists upon the benefit of a demurrer.

Wm. Tidmore answers and says, that the John Tidmore who united with him in making the note in question, is not the same who has exhibited the bill in this cause, but another and different person; that he does not know whether process was ever served on the complainant informing him of the pendency of the suit at law, or whether his co-maker was ever served with such process.

Depositions were taken at the instance of the complainant, in which it is positively proved that a note was made by a son of the defendant, Tidmore, (together with his father,) who bears the same name as the complainant, dated about the 15th April, 1841, for the payment, on the 1st of January thereafter, of a sum between thirteen and fourteen hundred dollars to Messrs. Herndon & Kelly.

The Chancellor was of opinion, upon a view of all the circumstances, that the note in question was not made by the complainant, but by the defendant Tidmore and his son; this being so, he concluded that it must be intended that the process issued in the suit at law, was served on the makers of the note, consequently it was ordered and adjudged that the injunction be perpetuated, and that the defendants, Messrs. Herndon & Kelly, and Givens, pay the costs of the suit.

S. F. Rice, for the plaintiff in error, made the following points:
1. The complainant should not have sought relief in equity, even conceding the truth of every allegation in his bill; but he should have prosecuted a writ of error to reverse the judgment, because process had not been served on him, and upon the cause being remanded, he should have denied that he made the note, and had the issue tried at law. 2. The allegations of the bill are not supported by proof—the note was not produced—the witnesses speak of *a note*, but they do not identify the one in question. The want of proof cannot be supplied by using the defendant's answers as evidence against each other. [Moore, et al. v. Hubbard, et al. 4 Ala. Rep. 187.] 3. There is no evidence that the writ was not served on the complainant; this might have been

shown, by the officer who was charged with its execution, or perhaps by the production of the process, if the allegation is true in point of fact. If he had notice, and failed to defend at law, he cannot come into equity. [French v. Garner, 7 Porter's Rep. 549.] 4. Conceding that the note of which the witnesses speak agrees in description with the one in question, yet there is no proof of its delivery, but for any thing appearing to the contrary, it may have been destroyed. The complainant might have examined the defendant, Wm. T., on this point, but the defendants could not, because his interest was favorable to their success. 5. It was objected at the hearing, that the proof made by the complainant in respect to the note, was not admissible, because the note itself was not produced, or its absence accounted for, and though the objection does not appear in the original decree, yet the Chancellor certified it by way of amendment; and it is insisted that it should be sustained. 6. *Lastly;* the complainant alledges that the judgment was obtained against him, and he alledges no excuse for not defending at law.

W. B. Martin, for the defendant in error.

COLLIER, C. J.—It does not appear, either by the bill, answers, or proof, that the record of the cause at law, shows that the process was not served on the complainant, but the fair inference is, that the record does not sustain the allegation of the bill, or the Chancellor would doubtless have noticed it in his decree. Be this as it may, the complainant was not bound to sue out a writ of error to reverse the judgment, that he might defend himself at law, but he might waive his legal remedy, if an appellate Court could have afforded one, and seek to annul the judgment against him through the medium of a Court of Equity. Reynolds v. Dothard, et al. 7 Ala. Rep. 664, is conclusive upon this point.

This case does not come within the influence of Lockhart, et al. v. McElroy, 4 Ala. Rep. 572, in which it was held to be competent for a Court to prevent an improper from use being made of an execution issued under its authority, by awarding a *supersedeas;* and this although the objection does not appear of record. Here the objection is not, that the execution was not warranted by the judgment; this is conceded by the bill, which affirms that the

judgment has been rendered against the complainant. The questions to be considered, are, does the case stated in the bill authorize the interference of equity, and is the decree supported by the proof?

It is explicitly alledged that the judgment was rendered against the complainant without consideration, fraudulently, and though no notice was given him of the pendency of the suit, by the service of process or otherwise. Taking this to be true, and it is clear that there was no opportunity to defend at law. If, under such circumstances, Chancery could not give relief, then the complainant, though he have moral justice on his side, and might have made defence at law, if he had notice, is now remediless without any fault of his. It may be that the sheriff's return is a matter of record, and cannot be falsified by a plea, yet we have have always considered, that it is not so conclusive but a defendant may alledge the want of notice as an excuse for not making defence at law. [See Brooks, et al. v. Harrison, 2 Ala. Rep. 209 ; Gibbs & Labuzan v. Frost & Dickinson, 4 Ala. Rep. 720.]

It does not appear, by proof so conclusive as to make it impossible to be otherwise, that the son of the defendant, Tidmore, signed the note in question instead of the complainant. Yet we think it cannot be reasonably doubted, that the note of which the witnesses spoke, is the one on which the judgment was obtained. They agree in their amounts and dates, and as it does not appear that the son ever signed more than one note for his father, it may be fairly inferred that the complainant did not unite with the father as a co-maker ; especially, in the absence of all proof tending to such a conclusion.

The defendants do not positively affirm that the service of process was effected upon the complainant, but their answers are merely an expression of their opinion or belief. To overbalance such a denial of an allegation, it certainly does not require proof the most stringent and conclusive.

It is a general rule, that the party holding the affirmative of the issue, must sustain it by proof, but there are some exceptions in which the proposition, though negative in its terms, must be proved by the party who states it. One class of these exceptions, it is said, includes those cases in which the plaintiff *grounds his right of action upon a negative allegation,* and where, of

course, the establishment of this negative is an essential element in his case.   But where the subject matter of the negative aver-ment lies *peculiarly within the knowledge* of the other party, the averment is taken as true, unless disproved by that party.   Such is the case in civil or criminal prosecutions for a penalty for doing an act which the statutes do not permit to be done by any persons, except those who are duly licensed therefor.   So where the nega-tive allegation involves a charge of *criminal neglect of duty*, whether official or otherwise; fraud, or wrongful violation of actual lawful possession of property, making the party the allegation must prove it.   So where infancy is alledged, illegitimacy, (under some circumstances,) insanity, or death, where the presumption in favor of the latter cannot be indulged from lapse of time; the burden of proof is on the party making the allegation, notwithstanding its negative character.   [Greenl. on Ev. 89 to 92; Gresly's Eq. Ev. 288-9 ; C. & H.'s Notes to Phil. Ev. 483 to 486, 490-1, 544-5 ; Carpenter v. Devon, et al. 6 Ala. Rep. 718.]

In respect to the objection, that the proof offered by the com-plainant, touching the note, should not have been received, we think it cannot be supported.   The bill and answers all admit the existence of the note to which it is supposed the testimony relates, as the foundation of the action in which the judgment was recovered.   It is conceded that such a note as is indicated by the record is really in existence, and the only question is, wheth-er it was made by the complainant or some one bearing his name, The pleadings make the note, with all the proceeding at law thereon, evidence.   Either of the parties may use it, if they think proper, but the failure to produce the note, will not render in-competent all evidence tending to show which of several per-sons of the same name made it.   If such evidence is insufficient, without the production of the note in fact, of course the Chan-cellor will only accord to it its proper effect, but there would be no warrant for its exclusion *in toto*.

If it appeared from the writ, that it was served upon an indi-vidual of the complainant's name, the *prima facie* intendment would be, that it was duly executed, and that he had notice of the pendency of his suit.   But whenever it was shown that the complainant was not a party to the writing, but it was made by another person of the same name, resident in the same county, then the presumption would be wholly repelled, and no inference

adverse to the complainant could be predicated of the sheriff's return. In this predicament of the case, it would be incumbent upon the defendants to show that the complainant was served with process, in order to fix on him the imputation of neglect, and thus prevent him from asserting his defence in equity. It follows from this view, that the injunction was perpetuated upon satisfactory evidence; the decree is therefore affirmed.